## HAGERSTOWN TRUST COMPANY, Executor of Edward M. Mealey, Deceased.

*Orphans' Courts: opinions and orders; presumptions. Decedents' estates: jurisdiction of Equity and of Orphans' Court; trusts; duration of—; trustee and executor; one and the same person or corporation; accounting; presumption as to—; termination of trust; Statute of Uses. Income or corpus of estate: taxation; collateral inheritance; widows.*

It is the order of an Orphans' Court, and not its opinion, that affects the rights of parties, and on appeal to the Court of Appeals from the Orphans' Courts it is only with such orders that the Court is concerned.                                    p. 229

On appeal from a ruling of the Orphans' Court, it is to be presumed in the absence of any facts upon which to base a conclusion, that the ruling of the Court was correct.    p. 230

Under section 120 of Article 81, Code (1912), the collateral inheritance tax is not to be charged against a widow for property bequeathed to her by her husband.                  p. 230

The principle for determining whether a fund received by an estate is to be treated as *corpus* or as *income,* as laid down in *Thomas* v. *Gregg,* 78 Md. 556, affirmed.                  p. 230

When the same person is executor and trustee, and where the executor's account has been passed before the expiration of the year allowed him within which to pass his account, the question whether the estate has passed from the executor, as such, to the same party as trustee does not arise.    p. 233

By his will a testator, after making certain legacies, left the residue of his estate to a trustee, in trust to pay the net income to his wife for life; on her death the trustee was to pay over the property to certain remaindermen; the widow died within a year of her husband's death, and before

the executor (who was also the trustee), had made any payment to her or for her, and before he had passed any account. *Held,* that in the final account of the executor a proper allowance and entry would be, from the full amount of income with which the executor charged himself, to deduct the net amount of the income collected and owing by him to the wife up to the time of her death.  p. 231

If there had been active duties for the trustee to perform for the benefit of the remaindermen, other than the mere passing over of the estate to them, it would have been the duty of the executor to turn the property in his hands over to the trustee, whether himself or some other.  p. 234

It is not within the jurisdiction of the Orphans' Court to decide whether or not a trust has ceased or determined. Such power is vested solely in Courts of Equity, and without such affirmative adjudication a trustee may properly decline to pay over the trust fund in his hand.  p. 235

Where all the purposes of a trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use.  -  p. 234

Whether or not a trust survives the death of the life tenant depends upon the terms creating the trust.  p. 234

The Orphans' Court is a Court of limited jurisdiction and has, in general, no power either to construe wills or administer trusts under the general powers given by Article 93, section 235 of the Code of Public General Laws (1912).  p. 232

Orphans' Courts are the proper tribunals to settle the estates of deceased persons, and under their power such Courts may in certain instances construe wills, as, for example, when they use that power to approve accounts of executors by which payments of legacies have been made. ·  p. 232

In order to give a Court of Equity jurisdiction over the estates of deceased persons, some special circumstance must appear, as when a trust has devolved upon a trustee about which he is doubtful.  p. 233

The Statute of Uses (27 Henry VIII, Chap. 10), has no application to personal property.  p. 232

*Decided January 14th, 1913.*

Appeal from the Orphans' Court of Washington County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Samuel B. Loose* (with *Charles D. Wagaman* on the brief), for the appellant.

*Frank G. Wagaman* and *C. A. Little* submitted a brief for the Washington County Hospital and the Washington County Free Library.

STOCKBRIDGE, J., delivered the opinion of the Court.

The will of Edward W. Mealey, a wealthy citizen of Washington County, was probated in the Orphans' Court of that county on the 12th day of May, 1911.

The seventh and eighth clauses were as follows:

"7th. All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate, I give, devise and bequeath to the Hagerstown Trust Company of Hagerstown, Maryland, Trustee, to hold the same and collect the income therefrom, and pay over the net amount thereof, to my wife, Adelaide Savage Mealey, in semi-annual instalments, and upon her death I direct that the whole corpus or principal of the trust estate held under this clause of my will be passed over and delivered by my said Trustee as follows: Two-thirds thereof to the Washington County Hospital Association, a body corporate, duly incorporated under the laws of the State of Maryland; and the remaining one-third thereof to the Washington County Free Library, a body corporate, duly incorporated under the laws of the State of Maryland.

8th. I hereby confer upon the Hagerstown Trust Company of Hagerstown, Maryland, Trustee, and its successors in the Trust, full power and authority to

invest and reinvest all sums of money which shall come
into its hands under the provisions of this my Will,
and confer upon it full power and authority to sell
and dispose of, assign and convey any part of the whole
of the trust funds in its hands, either for the purpose
of changing the investments thereof, or for any other
purpose which, in its judgment, may be necessary to
facilitate the administration of the estate."

Adelaide Savage Mealey, the wife of the testator, was by
the provisions quoted entitled to the net income of the estate
of the testator during the term of her life. She died on the
8th day of March, 1912, of which the executor had knowl-
edge, both through general repute and private telegram.
Four days after the death of Mrs. Mealey, the executor took
into the Orphans' Court of Washington County what pur-
ported to be its first and final account as executor of Mr.
Mealey, and that account was on the 12th day of March
approved.

On the 19th April the Hagerstown Trust Company as
executor filed a petition in the Orphans' Court asking to
have the account which it had stated, and which had been
approved by the Court on the 12th March, set aside, and on
the 23rd day of April the Court passed its order reopening
and setting aside the account of the executor passed on
March 12th, 1912, and directing that the executor forthwith
state said account under the direction and authority of the
Court. Three days later, on April 26th, 1912, a restated
account was presented by the executor to the Orphans' Court,
which account so presented was rejected by the Court on the
30th of April, 1912, the order of such rejection being as
follows:

"It appearing from the petition of said Hagerstown
Trust Company, Executor as aforesaid, filed April
19th, 1912, that said Executor had received, since the
death of Edward W. Mealey, 'From Tygart's River
Lumber Company, $19,000.00,' and from the 'Glady
Fork Lumber Company, $3,200.00,' which sums were

claimed by the life tenant under the will of said Edward W. Mealey, his widow, during her life, as income to be paid her according to the provisions of the seventh clause of said Edward W. Mealey's will, and since her death, will be claimed by her legal representatives; and on the other hand, are claimed by the remaindermen (the 'Washington County Hospital Association' and the 'Washington County Free Library') to constitute a part of the corpus of the estate, and that said Executor has knowledge of said counter claims, which have not been submitted to a Court of competent jurisdiction for adjudication.

It is an error on the part of the said Executor to distribute said sums of $19,000.00 and $3,200.00 as part of the corpus of the estate of the decedent, and the said Executor should have retained said sums in its hands, a reasonable time, to await a determination of the dispute in relation thereto.

It also appearing from the petition aforesaid of the said Executor that Mrs. Adelaide Savage Mealey, the widow of the decedent, Edward W. Mealey, died on March 8th, 1912, prior to the 'Restatement of said first and final account,' it was an error on the part of said Executor to distribute to the Hagerstown Trust Company of Hagerstown, Maryland, Trustee, the 'Balance of the Estate,' as shown in its account to be $363,686.21, after deducting $19,141.37 for Collateral Inheritance Tax, no such tax being imposed upon estates, real or personal, passing from any person to a body corporate, in trust, for the use of the wife of the grantor, said balance of $363,686.21 (being the balance after the deduction of the collateral inheritance tax) should have been (in accordance with the Statute of Uses, 27 Henry 8th, Chapter 10), distributed direct to the remaindermen, the Washington County Hospital Association and the Washington County Free Library.

It is therefore ordered, this 30th day of April, 1912, that the said account of the said Hagerstown Trust Company, Executor of Edward W. Mealey, deceased,

as restated, be and the same is hereby rejected, and the
said Executor is hereby ordered to restate said account
in accordance with the directions above given."

From this order of the Orphans' Court the executor has
taken an appeal to this Court.

Numerous questions arise under this appeal, which will be
considered in order. These are stated in the brief of the
appellant, as follows:

1st. Is the restated account of April 26th, 1912,
right?

2nd. The power of the Orphans' Court to adjudicate
trusts.

3rd. Conceding the jurisdiction, is the opinion of the
Court and its order of April 30th, 1912, right?

It will be observed that the third question as phrased by
the appellant is whether the *opinion* of the Court and its
order of April 30th, 1912, is right. All this Court is con-
cerned in is, whether the *order* is right. That may be en-
tirely proper and yet the opinion of the Court an error; con-
sequently the first and third questions as stated by the appel-
lee may properly be considered together.

The first matter to be passed upon is the correctness of
the account in distributing two sums of money, viz, $19,-
000.00 received from the Tygart's River Lumber Co. and
$3,200 received from the Glady Fork Lumber Co. as part
of the corpus of the estate of said deceased. All that ap-
pears from the record in this case with regard to either of
these sums are two items in the account which charge the
executor with the receipt of these moneys, and the allegation
of the second paragraph of the petition filed on the 19th
April, which simply states that the executor has received
these sums, but whether they were received as dividends
upon the stock of the respective corporations, or in liquida-
tion by them in the process of voluntary dissolution, or the
payment of accumulated dividends, or as payments on ac-
count of the reduction of the capital stock, nowhere appears,

230 HAGERSTOWN TRUST CO., Ex. of MEALEY.

and in such a condition it is impossible for this Court to say whether those sums of money, respectively, constitute a portion of the corpus or should have been treated as income of the estate of Mr. Mealey. The principles for the determination of this question have been frequently laid down by this Court; see the cases of *Thomas* v. *Gregg,* 78 Md. 556; *Smith* v. *Hooper,* 95 Md. 16; *Robinson* v. *Bonaparte,* 102 Md. 63; *Atlantic Coast Line cases,* 102 Md. 73; *Ex Parte Humbird,* 114 Md. 627. But there are no facts before this Court by which it can say affirmatively whether that portion of the order of the Orphans' Court appealed from was correct or incorrect. In the absence of any facts upon which to base a conclusion, the presumption is that the ruling of the lower Court was correct, until the contrary appears.

There are certain matters in the account which are not entirely clear; thus, whether the item of $37.39, appearing as the amount of the collateral tax upon the appraised value of certain pictures, books and antiques was intended as a charge against the life-interest in them of the window, or against the remaindermen, it is impossible to tell. If it was the intention to make this, or any portion of it, a charge against the life-interest of Adelaide Savage Mealey, the widow of the testator, it is manifestly at variance with the Code (1912), Article 81, Section 120; while on the other hand, if it was intended only as indicating the amount of the tax to be paid by the remaindermen who had already become entitled to the property when the account was presented in the Orphans' Court, the item was entirely proper.

There also appears in the re-stated account the following item: "From which deduct this sum, income charged in this account, which under the 7th clause of the will of testator goes to testator's widow and by this executor paid to trustee, $11,167.64." No such corresponding item, or anything like it, appears in the original account, and the natural inference from the manner in which the item is expressed would be, that Mrs. Mealey was living at the time, and that the property was passed over to the trustee for her benefit, in accord-

ance with the terms of the will; but Mrs. Mealey had died on the 8th of March, and this re-stated account was not filed until the 26th day of April, a month and a half later. Apparently there was no payment made by the executor to the trustee for Mrs. Mealey's benefit from the time of the death of her husband until the time of her own death, when the trust expired, and this item was then inserted either for the purpose of giving the impression that Mrs. Mealey was still living and that there were active duties for the trustee to perform for her benefit, and thus preserve the trust for the benefit of the trustee, or else the account is misleading. Under the seventh clause of Mr. Mealey's will, his widow was to receive in semi-annual instalments the net income from his estate, but as no dates appear in the account to show when this item of income was received, whether before or after her death, it is impossible for this Court to say from the condition of the record, whether the allowance so asked for by the executor was correct or not. Mrs. Mealey was entitled under her husband's will to receive the net income, as in the will provided, and if there was income due her which had not been paid at the time of her death, it was manifestly a part of her estate and would pass to her personal representative. The payment to her representative must under the terms of the will come from the trustee, and with regard to that as well as with regard to the trust created by the fourth and fifth clauses of the will, the trustee had active duties to perform. A more accurate way to have stated the allowance asked for in the item now being considered would have been "from which deduct this sum paid by the executor to the trustee, under the seventh clause of the will of the testator, being the net amount of income collected and owing to the estate of Adelaide Savage Mealey, deceased, up to the 8th day of March, 1912, $. . . . . . . . . ."

This leaves for determination one question, and that by far the most important of the case. By both the original and restated accounts the balance of the estate was distributed to "the Hagerstown Trust Co., trustee, to hold the same and

collect the income therefrom and to pay over the net amount thereof to Adelaide Savage Mealey in semi-annual instalments and upon her death the whole corpus of the trust estate held by the said trustee shall be passed over and delivered by said trustee as follows: two-thirds thereof to the Washington County Hospital Association and the remaining one-third thereof to the Washington County Free Library." This distribution is open to exactly the same criticism as that already made, namely, that at the time when this account was presented the beneficiary who was to receive the income was dead, and it was manifestly an error to make a distribution for the benefit of a person no longer in *esse* and whose interest had terminated with her death. The order of the Orphans' Court directed the executor to make distribution directly to the Washington County Hospital Association and the Washington County Library, but the distribution then to be made was of personal property and not realty, and therefore the Statute of Uses had no application. *Denton* v. *Denton,* 17 Md. 407. The contention upon the part of the Trust Company is that the Orphans' Court, being a Court of limited jurisdiction, is without power either to construe a will, or administer a trust. That an Orphans' Court has no jurisdiction to administer a continuing trust has been repeatedly decided by this Court. *Conner* v. *Ogle,* 4 Md. Ch. 425; *Taylor* v. *Broscup,* 27 Md. 219; *State* v. *Cheston,* 51 Md. 352; *Coudon* v. *Updegraff,* 117 Md. 71.

Article 93, Section 235, Code 1912, contains the grant of powers to the Orphans' Courts, and these are "to take probate of wills, grant letters testamentary and of administration; direct the conduct and accounting of executors and administrators, and administer justice in all matters relating to affairs of deceased persons." It follows from this grant of power that the Orphans' Court is for most purposes the proper forum in which to settle the estate of a deceased person, and to say generally that it possesses no power to construe wills, would be to deny to it the power to approve an account of an executor by which payments of legacies were

made, and force the estate of every person who was so unfortunate as to leave a will to the double expense of administration in the Orphans' Court, and then being taken into an Equity Court for a construction of a will and a payment of the legacies contained therein; therefore, it has been frequently said that "in order to give the equity Court jurisdiction some special circumstances must appear, such as a trust devolved on a trustee and about which he is doubtful, something more than the mere payment over of a legacy after the debts are paid." *Woods* v. *Fuller*, 61 Md. 457. Nor can there arise in this case the question which sometimes arises, that because of the lapse of time, property, or the title to it, is presumed to have passed from an individual in one capacity as executor, to the same individual in the capacity of trustee, *Abell* v. *Brady*, 79 Md. 94, because when the original account was rendered in this case the twelve months from the grant of letters which is allowed to an executor for settlement of his decedent's estate had not elapsed, and that he had not in fact paid it over as he might possibly have done after the expiration of six months, is apparent from the account itself.

The will in this case is not intricate or ambiguous. The objects which Mr. Mealey had in mind, were that the Hagerstown Trust Company should hold and manage the corpus of his property, after the payment of certain named legacies, for the benefit and advantage of his wife so as to provide her without trouble or care an adequate income for her support and maintenance during her life, that the trust created for her benefit should cease at her death, and the property be passed to two institutions in which he was interested. He did not contemplate the performance of any duty or service upon the part of the Hagerstown Trust Company for the benefit of the Washington County Hospital Association or the Washington County Free Library, only the passing over to the two corporations the corpus of the estate in the hands of the trustee at the death of his widow.

Is it then necessary that the executor should turn the property in its hands over to a trustee, whether itself or some other, simply as a conduit to the legatees entitled? If there were active duties of trust administration to be performed, manifestly such would be the only proper course to pursue.

It has also been repeatedly held that where all the purposes of a trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use. *Milholland* v. *Whalen,* 89 Md. 212; *Owens* v. *Crow,* 62 Md. 494; *Long* v. *Long,* 62 Md. 33.

The case of *Hanson* v. *Worthington,* 12 Md. 419, presented a question very similar to the one at bar, it differed from the present case in this respect—in that case there was an interval of twelve years from the time of the grant of letters until the passage of the account which gave rise to the litigation, and by reason of the length of time which had elapsed the estate involved was regarded as having passed from the executor to the trustees by operation of law. Whether or not a trust survives the death of the life tenant is said in a number of cases to depend upon the terms of the will creating the trust. "When that intention can be plainly gathered from the will, the trustee can only be discharged from his trust by paying over the fund to the *cestui que trust* in remainder." *DeBearn* v. *Winans,* 111 Md. 475. In *Hanson* v. *Worthington, supra,* and *Denton* v. *Denton, supra,* this Court decided that such had been the intent of testator in each of those cases. So in the present case, Mr. Mealey undoubtedly intended and expected that the property constituting his estate would pass from his executor to the trustee named by him, to be administered for the benefit of his wife during her life. He did not contemplate and so made no provision for the case of the death of his wife before the fund ever reached the hands of the trustee.

There is another serious objection to a distribution by the executor directly to the remaindermen, as ordered by the Orphans' Court. Such a distribution or passing over of the property can only be done upon the termination of the trust.

Now while under the particular facts of this case that is not a matter susceptible of controversy, the termination *vel non* of a trust may present questions of extreme difficulty, and nowhere is there to be found any authority reposed in the Orphans' Courts of this State to adjudicate a question of this character. That power is vested solely in the Courts of Equity, and without such affirmative adjudication a trustee may properly decline to pay over the trust fund in his hands.

A brief has been filed in this case by attorneys representing the Washington County Hospital Association and the Washington County Free Library, claiming as to each of these legatees and remaindermen, that under their charters the funds distributed to them are exempt from collateral inheritance tax. There is nothing contained in the record which raises this issue, and it does appear from that brief that this question has already been made a subject of litigation in a Court of competent jurisdiction, but there is nothing before this Court relative thereto upon which any order could be based, and no opinion is expressed with regard thereto.

For the reasons indicated the order of the Orphans' Court of Washington County of April 30th, 1912, must be reversed.

> *Order reversed and cause remanded, to the end that an account may be passed in accordance with an opinion this day filed. Costs to be paid by the executor out of the estate in its hands.*